**UNITED STATES of America,**
**Plaintiff,**

v.

**German ACEVEDO–DELGADO,**
**Defendant.**

**No. CRIM. 01–556(HL)(GAG).**

United States District Court,
D. Puerto Rico.

Oct. 3, 2001.

Margaret Larrea, U.S. Attorney's Office, Hato Rey, P.R., Special Assistant U.S. Attorney for the Government.

Linda Backiel Ratcliffe, San Juan, P.R., for Germán Acevedo–Delgado.

## OPINION AND ORDER

GELPÍ, United States Magistrate Judge.

The Reverend Germán Acevedo–Delgado, an ordained Methodist minister, stands charged with illegally entering the limits of Camp García Naval Installation at Vieques, Puerto Rico, on August 3, 2001, without proper permission or authority, in violation of 10 U.S.C. § 1382 and 32 C.F.R. §§ 770.35—.40.[1] Trial in this case is set for October 11, 2001.

---

1. 18 U.S.C. § 1382 prohibits any person within the jurisdiction of the United States to enter "upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation." 32 C.F.R. § 770.38, in turn, provides that "[e]xcept for duly authorized military personnel and civilian employees, including contract employees, of the United States in the performance of their official duties, entry upon any U.S. Naval installation or property *in Puerto Rico* at anytime, *by any person for any purpose whatsoever* without the advanced consent of the Commanding Officer of the installation or property concerned, or an authorized representative of that Commanding Officer, is prohibited." (Emphasis added).

Before the Court is Reverend Acevedo–Delgado's *"Proffer with Respect to Defense of Religious Obedience"* (Docket No. 13), as well as the Government's response thereto (Docket No. 14). In said motion, the defendant submits that his unauthorized entry into Navy land on Vieques was carried out in obedience to the Ten Commandments, the Old and New Testaments, and Resolutions of the United Methodist Church. He claims he entered Naval property with a firm religious conviction that his act was necessary to protect life and the environment in Vieques.[2] He also notes that his Church's efforts to convince the President and Congress of the United States to put an immediate end to naval bombing exercises in Vieques thus far have not been successful.

Reverend Acevedo–Delgado contends that he lacks the *mens rea* required to hold him criminally responsible for his act of trespassing because his act was one of religious obedience. He further contends that to impose criminal liability on the facts of this case would violate the Free Exercise Clause of the First Amendment, U.S. Const. Am. I cl. 1, as well as the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*

### Legal Analysis

#### A. *Mens Rea*

■ An unauthorized entry into Camp García Naval Installation, in and of itself, can constitute the prohibited purpose required to sustain a conviction under Section 1382. *United States v. Maxwell*, 254 F.3d 21, 24–25 (1st Cir.2001); *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir.1981). The purpose of the unauthorized entry is irrelevant for a conviction under Section 1382 and 32 C.F.R. § 770.3, as no specific intent to violate the statute and regulation need be shown. *Id.; United States v. McGrath–Andino*, 143 F.Supp.2d 184, 185 (D.P.R.2001). All that is needed to satisfy Section 1382's "purpose" requirement is that a person's entry into the naval property be deliberate. *Maxwell, supra* at 25.

■ In the case at bar, the defendant's proffer of evidence of "religious obedience" is purportedly aimed at demonstrating at trial that his entry into Camp García, while not previously authorized, lacked criminal intent. Although he characterizes said evidence as probative of the absence of a "deliberate" entry on his behalf, the Court nonetheless finds the same unavailing, as belied by his own proffer. Reverend Acevedo–Delgado accepts that he entered Camp García close to midnight, on August 2, 2001. *See* Defendant's Proffer at ¶ 3. He further admits that he was aware that his entry was prohibited by law. *See id.* at ¶ 6.

■ The defendant's proffer, if admitted as evidence, perhaps could raise an issue as to specific intent. However, the First Circuit's decisions in *Maxwell* and *Parrilla Bonilla, supra,* leave no doubt as to the irrelevance of such evidence in this case.[3]

---

**2.** To sustain his proffer on harm to the public and environment, defendant has annexed to his proffer a 1999 photograph of the Navy impact area in Vieques (Exhibit B), as well as a study on contamination in said island-municipality by Engineer Rafael Cruz Pérez, published in the April–June 2000 edition of *Dimensión* magazine, published by the Puerto Rico College of Engineers (Exhibit C).

**3.** Even in a prosecution for a crime which requires specific intent, the fact that a defendant believes he was doing God's work is not sufficient to negate his *mens rea. See United States v. Bennett*, 161 F.3d 171, 181–182 (3rd Cir.1998)(noting that the morality or goodness of defendant's conduct is not necessarily inconsistent with a guilty *mens rea*).

### B. Free Exercise Clause

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." The United States Supreme Court has never held that an individual's religious beliefs can effectively excuse him from compliance with laws that prohibit certain criminal conduct. *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878–879, 110 S.Ct. 1595, 108 L.Ed.2d 876, reh'g den., 496 U.S. 913, 110 S.Ct. 2605, 110 L.Ed.2d 285 (1990). To sanction such an exception would simply put "religious belief superior to the law of the land, and in effect ... permit every citizen to become law unto himself." *Reynolds v. United States*, 98 U.S. 145, 166–167, 25 L.Ed. 244 (1878). ***"Consciencious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs"***. *Minersville v. School Dist. v. Gobitis*, 310 U.S. 586, 594–595, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940) (emphasis added).

■ An individual's right to freely exercise his religious beliefs never relieves him of the obligation to comply with a "valid and neutral law of general applicability" on the ground that his religion prescribes such conduct. *Employment Division, supra* at 879, 110 S.Ct. 1595 (rejecting free exercise claim against criminalization of use of peyote); *Reynolds, supra* at 166 (rejecting free exercise claim against state antipolygamy statute). *See also United States v. Lee*, 455 U.S. 252, 258, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982) (rejecting First Amendment claim that Social Security taxation laws violated employees' religious beliefs; Social Security system serves a compelling government interest);

*Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (rejecting defendant's First Amendment claim that she could not be prosecuted under child labor laws for using her children to distribute literature in the streets; well-being of youths is a compelling government interest).

■ The federal trespass statute at issue, 18 U.S.C. § 1382, is neutral on its face, as well as substantively, and it generally applies to all members of the public. *United States v. Albertini*, 472 U.S. 675, 687, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *Mc Grath–Andino, supra* at 186. It applies to Reverend Acevedo–Delgado in the same manner it applies to all persons who for any given purpose—religious or nonreligious—enter Camp García without due authorization. There is also no indication whatsoever that Section 1382 was enacted with any animosity towards defendant's religious affiliation, or any religion for that matter. *Cf. Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 539, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (striking down local ordinance under strict scrutiny analysis where the same was enacted to disfavor religion).

### C. Religious Freedom Restoration Act

■ The RFRA, 42 U.S.C. § 2000bb, provides in relevant part that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." The statute, however, provides an exception, where the substantial burden on a person's exercise of religion is in furtherance of a compelling governmental interest, and, is the least restrictive means of furthering that compelling government interest.

The Court in this case finds that Section 1382 and 32 C.F.R. § 770.38 do not place a "substantial burden" on Reverend Aceve-

do–Delgado's ability to worship or engage in religious activity. The Government is not interfering with his ability to attend religious services, pray, worship or fulfill his various duties as a Methodist Minister. He is clearly capable of demonstrating his Church's commitment to the island-municipality of Vieques and its inhabitants outside naval property. He may also continue advocating before federal and state executive, legislative and judicial forums his Church's position regarding the immediate halt of all military exercises in Vieques.

■ Assuming, *arguendo*, that the statute and regulation at issue place a substantial burden on the defendant's religious beliefs, the Court nonetheless finds that the Government has a compelling interest to justify his exclusion from Camp García. The compelling government interest in this case is the ability to effectively carry out national security needs by protecting the security of United States Naval installations. In order to maintain military readiness, the Navy must assure that it is capable of performing should the United States become involved in any war-related activities. As Judge Pérez–Giménez of this District accurately augured in April of this very year:

"We are living at a time where the relative peace enjoyed by all citizens of the United States is being challenged more and more frequently by our enemies and terrorists alike. Lately there have been signs of real international tension. If world peace is to be achieved, the United States must continue to be the driving force of democratic principles. An integral part of world leadership is having a well trained military that is ready to absorb all challenges that may arise. It is thus abundantly clear that the Court cannot simply zoom in on the concerns of [one person or group(s) of United States citizens] but it must pan back and keep the larger picture in focus [taking into account the concerns of] ALL United States citizens, citizens who are entitled to a well-trained military and national security."

*Vieques Conservation and Historical Trust v. Bush,* 140 F.Supp.2d 127, 134 (D.P.R.2001). *See also United States v. Albertini,* 472 U.S. 675, 687, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)(noting that Section 1382 serves a significant Government interest). In addition, since certain areas on Camp García are used by the Navy for military training, there also exists a compelling need to protect the general public from possible injuries resulting from such training.

■ The Court also finds that Section 1382 is the least restrictive means of accomplishing the objective of national security. Any judicial attempt to carve out a religious exception to Section 1382 and 32 C.F.R. § 770.38 will result in significant administrative problems to the Navy, and open the door to a myriad of religious exceptions, as well as to endless constitutional claims of discrimination. *See United States v. Oliver,* 255 F.3d 588, 589 (8th Cir.2001) (rejecting argument under RFRA that one-man judicial exception to criminal statute should be made, under the premise that there are no safeguards to prevent similarly situated individuals from asserting the same privilege and leading to uncontrolled enforcement of statute).

## Conclusion

The Court holds that Reverend Acevedo–Delgado's proffer as to evidence of religious obedience (Docket No. 13) is irrelevant to the issue of whether he unlawfully entered Camp García, in violation of 10 U.S.C. § 1382 and 32 C.F.R. § 770.38. Said evidence will not be admitted nor considered by the Court during trial.

The Court also holds that prosecuting defendant under Section 1382 and 32 C.F.R. § 770.38 does not violate the Free Exercise Clause not the RFRA.

**SO ORDERED.**